# GT GreenbergTraurig

Nicholas A. Brown
Tel 415.655.1271
Fax 415.420-5609
brownn@gtlaw.com

July 29, 2016

*By ECF*

Peter R. Marksteiner
Clerk of Court
United States Federal Circuit Court Of Appeals
717 Madison Place, N.W.
Washington, D.C. 20439

**Re:    *Personal Audio, LLC v. Electronic Frontier Foundation*, No. 16-1123**

Dear Mr. Marksteiner:

The Electronic Frontier Foundation ("EFF") submits this letter in response to the Court's order directing the parties to brief whether the EFF "has standing to participate in this appeal under *Consumer Watchdog v. Wisconsin Alumni Research Found.*, 753 F.3d 1258 (Fed. Cir. 2014)."

*Consumer Watchdog* addresses the standing of the appellant, and does not suggest that EFF is not the proper appellee.  In fact, EFF's "standing" is immaterial here because it is Personal Audio, not EFF, that seeks to invoke the jurisdiction of this court.

In *Consumer Watchdog*, the appellant had unsuccessfully sought cancellation of a patent's claims in an *inter partes* re-examination, under the statutory scheme that existed prior to the America Invents Act ("AIA").[1]  After the PTAB declined to cancel the claims, Consumer Watchdog appealed.  The appeal was dismissed on the grounds that Consumer Watchdog lacked the "injury in fact" required for it to have Article III standing, because "the PTO did not abridge any of Consumer Watchdog's rights" by refusing to cancel the challenged claims.  The decision

---

[1] *Consumer Watchdog*, 753 F.3d at 1260.

Letter Brief, *Personal Audio, LLC v. Electronic Frontier Foundation*, No. 16-1123
Page 2

explains that "Consumer Watchdog was permitted to request reexamination and participate once the PTO granted its request" and that "[t]his is all the statute requires."[2]  Thus, if *Consumer Watchdog* establishes a principle, it is that a reexamination decision declining to cancel claims does not, without more, create sufficient injury to confer jurisdiction on this court.

This case is fundamentally different from *Consumer Watchdog*.  This case arises from an *inter partes* review ("IPR") filed under the AIA, where the PTAB found that all of the challenged claims were unpatentable.  Unlike in *Consumer Watchdog*, here the party invoking the jurisdiction of the federal courts is a patent owner who has been injured by the PTAB's cancellation of its claims.  The injury to Personal Audio gives this Court jurisdiction pursuant to Article III.  As discussed in more detail below, the Supreme Court's decision in *ASARCO Inc. v. Kadish*[3] shows that the EFF is the proper appellee to defend that decision, and that EFF's "standing" is immaterial because it is not the party invoking federal jurisdiction.  Any prudential concerns regarding this Court hearing an appeal with an appellee that was not required to have Article III standing to seek a decision from the PTAB are resolved by statute, which expressly grants EFF "the right to be a party to the appeal."[4]  Finally, even if EFF, as appellee, were required to show Article III standing independent of the PTAB's decision, it can do so in light of activities it has already undertaken that show it has a particularized and concrete interest in the outcome that distinguishes its position from that of the appellants in *Consumer Watchdog*.

A.    <u>**The "Standing" Requirements Of Article III Apply To Personal Audio**</u>

Article III of the Constitution limits the judicial power to resolving "Cases" and "Controversies."  The Supreme Court has found that this limitation creates a set of requirements

---

[2] *Id.* at 1262.
[3] 490 U.S. 605 (1989).
[4] 35 U.S.C. § 319

Letter Brief, *Personal Audio, LLC v. Electronic Frontier Foundation*, No. 16-1123
Page 3

that together make up the "irreducible constitutional minimum of standing."[5]    This

"constitutional minimum" has three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally
> protected interest which is (a) concrete and particularized, and (b) "actual or
> imminent, not 'conjectural' or 'hypothetical,'"    Second, there must be a causal
> connection between the injury and the conduct complained of—the injury has to
> be "fairly. . . trace[able] to the challenged action of the defendant, and not . . .
> th[e] result [of] the independent action of some third party not before the court."
> Third, it must be "likely," as opposed to merely "speculative," that the injury will
> be "redressed by a favorable decision."[6]

Each of these requirements is satisfied in this appeal.

First, the requirement that "the plaintiff must have suffered an 'injury in fact'" is met.

Though *Lujan* refers to the "plaintiff," when federal jurisdiction is first invoked at the appellate

level, the party that must show an injury is the "party seeking to invoke federal jurisdiction."[7]

Here, the party seeking to invoke federal jurisdiction is Personal Audio.  Personal Audio suffered

an 'injury in fact' when the PTAB resolved the IPR by finding that the challenged claims of its

patent were unpatentable.  That injury creates jurisdiction for this Court to hear this appeal, and

would do so even if EFF were not a party.  For example, in *Cuozzo Speed Tech., LLC v. Lee*, the

patent owner settled with the IPR petitioner after the PTAB issued its final decision, but the

appeal was nonetheless decided by both this court and the Supreme Court after the Patent Office

intervened pursuant to 35 U.S.C. § 143.[8]  Similarly, this Court recently decided *In re Magnum*

*Oil Tools Int'l, Ltd.* after the IPR petitioner settled with the patent owner and the Patent Office

---

[5] *Lexmark Int'l v. Static Control*, 134 S. Ct. 1377, 1386 (2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).
[6] *Lujan*, 504 U.S. at 560 (citations omitted).
[7] *Consumer Watchdog*, 753 F.3d at 1260; *see also ASARCO*, 490 U.S. at 619.
[8] *Cuozzo Speed Tech., LLC v. Lee*, 136 S. Ct. 890 (2016); *In re Cuozzo Speed Technologies, LLC*, 793 F.3d 1268, 1272 n. 2 ("Garmin filed a motion to withdraw because it agreed not to participate in any appeal of the IPR written decision as part of a settlement agreement with Cuozzo").

Letter Brief, *Personal Audio, LLC v. Electronic Frontier Foundation*, No. 16-1123
Page 4

intervened.[9]

Second, the requirement that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court" is met. Personal Audio's injury is the result of the PTAB's final written decision, and is "fairly traceable" to EFF's filing of the IPR petition that led to that decision. Personal Audio's injury is not the result of independent action by the Patent Office; the injury would not have occurred but for EFF's filing of an IPR petition.

Third, the requirement that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" is met. There is no dispute that this Court has the power to review the PTAB's decision.

Thus, the three requirements that make up the "irreducible constitutional minimum of standing" are satisfied in this case.

**B.    The Supreme Court's *Kadish* Decision Shows That EFF's Standing Is Immaterial And That EFF May Participate In This Appeal**

The Supreme Court's decision in *ASARCO Inc. v. Kadish* shows that EFF may participate in this appeal as the appellee even if it does not have the "standing" needed to independently invoke the jurisdiction of the federal courts.[10] *Kadish* involved an appeal from the Supreme Court of Arizona. The plaintiffs in the state court case would not have had Article III standing to bring suit in Federal Court. However the state courts—not being bound by Article III—properly heard and decided the case in favor of the plaintiffs.[11] The Supreme Court found that the state court judgment in favor of the plaintiffs injured the defendants. The Supreme Court held that this injury created a controversy that it could resolve with the plaintiffs as respondents, despite

---

[9]    __ F.3d __, Case No. 2015-1300 (Fed. Cir. July 25, 2016).
[10]    490 U.S. 605 (1989).
[11]    *Id.* at 617.

Letter Brief, *Personal Audio, LLC v. Electronic Frontier Foundation*, No. 16-1123
Page 5

their lack of Article III standing at the outset of the case:

> Although respondents would not have had standing to commence suit in federal court based on the allegations in the complaint, they are not the party attempting to invoke the federal judicial power. Instead it is petitioners, the defendants in the case and the losing parties below, who bring the case here and thus seek entry to the federal courts for the first time in the lawsuit. We determine that petitioners have standing to invoke the authority of a federal court and that this dispute now presents a justiciable case or controversy for resolution here.[12]

Assuming *arguendo* that EFF lacked Article III standing at the time that it filed its IPR petition, the circumstances here are directly analogous to the circumstances in *Kadish*. The initial adjudication was made outside the federal courts, by the PTAB. As in *Kadish*, that adjudication was properly made despite the fact that the party initiating the adjudication lacked Article III standing, because the rules of the adjudicating body did not require Article III standing.[13] And as in *Kadish*, that adjudication was then appealed to the federal courts. *Kadish* held that Article III jurisdiction exists in such circumstances, and resolved the case with the original plaintiffs as respondents despite finding that they would not have had standing to initiate the case in federal court. Accordingly, just as the original plaintiff in *Kadish* was entitled to defend the decision it won outside the federal courts despite not having Article III standing, here EFF is entitled to defend the decision it won before the PTAB, and its Article III standing is immaterial.[14]

---

[12] *Id.* at 618.

[13] *Consumer Watchdog*, 753 F.3d. at 1261 (explaining that while "Article III standing is not necessarily a requirement to appear before an administrative agency, once a party seeks review in a federal court, 'the constitutional requirement that it have standing kicks in.'"); 35 U.S.C. § 311.

[14] *See Kadish*, 490 U.S. at 620 ("If we were to vacate the judgment below on the ground that respondents lacked federal standing when they brought suit initially, that disposition would render nugatory the entire proceedings in the state courts. . . . It would be an unacceptable paradox to exercise jurisdiction to confirm that we lack it and then to interfere with a State's sovereign power by vacating a judgment rendered within its own proper authority.").

Letter Brief, *Personal Audio, LLC v. Electronic Frontier Foundation*, No. 16-1123
Page 6

**C.**     <u>**The Statutory Scheme Establishes That EFF Is The Proper Appellee In This Case And Overrides Any "Prudential" Concerns About EFF's Standing**</u>

The Patent Act gives any "person" other than a patent's owner the right to challenge the validity of the patent by submitting an *inter partes* review petition to the PTAB.[15] Once an *inter partes* review is resolved by a final written decision, the statutory scheme gives the parties to the *inter partes* review—here, EFF and Personal Audio—a statutory right to be a party to the appeal of that decision: "[a]ny party to the *inter partes* review shall have the right to be a party to the appeal."[16]

The only person other than EFF that might conceivably be the appellee in this case is the Director of the Patent Office. However, 35 U.S.C. § 143 gives the Director the right to *intervene*: "The Director shall have the right to intervene from a decision entered by the Patent Trial and Appeal Board . . . in an *inter partes* or post-grant review under chapter 31 or 32." Thus, the statutory scheme for *inter partes* review that is provided by the AIA—particularly 35 U.S.C. §§ 311, 319 and 143—establishes that EFF is the proper appellee in this case.

Some decisions have discussed "prudential, as opposed to Art. III, concerns" about standing.[17] There may be "prudential" concerns about allowing persons such as EFF to file petitions for *inter partes* review without requiring them to have Article III standing.[18] However, as the Supreme Court explained in *Lexmark International, Inc. v. Static Control Components,*

---

[15] 35 U.S.C. § 311 states that "a person who is not the owner of a patent may file with the Office a petition to institute an *inter partes* review of the patent."

[16] 35 U.S.C. § 319; *see also* 28 U.S.C 1295(a)(4)(A) (stating that the Federal Circuit has jurisdiction to hear appeals from the PTAB "at the instance of a party who exercised that party's right to participate in the applicable proceeding before or appeal to the Board").

[17] *INS v. Chadha*, 462 U.S. 919, 940 (1983).

[18] 35 U.S.C. § 311, *see Consumer Watchdog*, 753 F.3d. at 1261 (explaining that while "Article III standing is not necessarily a requirement to appear before an administrative agency, once a party seeks review in a federal court, 'the constitutional requirement that it have standing kicks in.'")

Letter Brief, *Personal Audio, LLC v. Electronic Frontier Foundation*, No. 16-1123
Page 7

*Inc.*, courts cannot use the principles of "prudential" standing to limit a cause of action that Congress has created:

> We do not ask whether in our judgment Congress should have authorized Static Control's suit, but whether Congress in fact did so. Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action that Congress has created merely because "prudence" dictates.[19]

This principle applies here. The statutory scheme for *inter partes* review that Congress created with the AIA makes EFF the proper appellee in this case, and that decision by Congress cannot be overridden by "prudential" or policy concerns that this Court may have.

## D.    It Would Not Make Sense To Find That EFF Cannot Participate As The Appellee

It would not make sense to find that EFF cannot participate in this appeal as the appellee because of a lack of standing. EFF would be constitutionally permitted to participate as an intervenor without having Article III standing on its own. This Court routinely recognizes the Director of the Patent Office as the appellee in cases where a patent owner or applicant challenges adverse decisions by the Patent Office. Assuming *arguendo* that EFF did not have Article III standing and that the appellee with standing was the Director, EFF would be constitutionally permitted to intervene, because "Article III does not require intervenors to independently possess standing where the intervention is into a subsisting and continuing Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so."[20]

---

[19] 134 S. Ct. 1377, 1388 (2014) (citations omitted and emphasis added).

[20] *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998); *see also Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994) ("An intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing.").

Letter Brief, *Personal Audio, LLC v. Electronic Frontier Foundation*, No. 16-1123
Page 8

In light of this law and the statutory scheme at issue, a finding that EFF cannot participate in this appeal as the appellee because of a lack of standing would lead to the *status quo*. Personal Audio would name the Director as the appellee.[21] EFF could then intervene, only to have EFF and Personal Audio wind up in substantially the same situation that already exists. That result would be particularly bizarre given the statutory scheme that specifically describes the Director as an inventor and EFF as a party. It makes more sense for this Court to recognize, as the Supreme Court recognized in *Kadish*, that EFF's standing is immaterial here because Personal Audio has standing and EFF is the proper appellee.

**E.     In The Alternative, EFF Has Standing Because, Unlike Consumer Watchdog, It Does Have A Particularized Interest In The Outcome Of This Case**

In *Consumer Watchdog*, Consumer Watchdog "[did] not allege[] any involvement in research or commercial activities involving [the field of the challenged patent]."[22] It did not allege that it was "engaged in any activity … that could form the basis for an infringement claim," nor did it allege that "it intends to engage in such activity." [23]

Here, Personal Audio has alleged that its patent covers podcasting. EFF is involved in podcasting. EFF produced its own podcast about digital rights, called Line Noise, and continues to make that podcast available on its website.[24] EFF's staff regularly appear as guests on other podcasts.[25] Furthermore, EFF is currently considering a specific proposal to collaborate with a partner to produce a podcast in the future.[26]

---

[21] There needs to be some appellee, and the only logical party other than EFF is the Director. *See, e.g. INS v. Chadha*, 462 U.S. 919, 940 (1983) (pointing out the prudential concern with sanctioning adjudication of cases in the absence of an opponent).
[22] *Consumer Watchdog*, 753 F.3d at 1260.
[23] *Id.* at 1261.
[24] Declaration of Cindy Cohn, attached as Exhibit A, at ¶ 5.
[25] *Id.* at ¶¶ 4, 6.
[26] *Id.* at ¶¶ 8-12.

Letter Brief, *Personal Audio, LLC v. Electronic Frontier Foundation*, No. 16-1123
Page 9

Accordingly, EFF is differently situated from Consumer Watchdog because it does have a concrete and particularized interest in the outcome of this case due to its past, present, and expected future involvement in podcasting, which is what Personal Audio has alleged is covered by its patent.

**F.    In The Alternative That The Court Concludes That EFF Does Not Have Standing To Participate In This Appeal As A Party, It Should Be Allowed To Participate As An Intervenor Or *Amicus***

In the alternative, should the Court find that EFF lacks standing to participate in this appeal, EFF requests that the Court treat its submissions as the submissions of an intervenor, or at least an *amicus*.  The Court has jurisdiction over the appeal, and it is important that there be adversarial presentation to aid the Court's determination on the merits.  Allowing EFF to participate as an intervenor, or as *amicus*, would be akin to what the Supreme Court does a few times each Term, after one of the parties informs the Court that it will not defend the rationale of the lower court's decision.  In that scenario, the Court will appoint an *amicus* to defend the lower court's ruling.[27]  Courts of Appeals often do the same when necessary to ensure adversarial presentation of the issues.[28]  A similar course would be appropriate here.

Sincerely,


Nicholas A. Brown
Counsel for Appellee
Electronic Frontier Foundation


cc: All counsel of record, via ECF

---

[27] *See, e.g.*, *Green v. Brennan*, 136 S.Ct. 14, 2015 WL 4542438 (July 28, 2015) (appointing amicus to brief and argue the case 'in support of the judgment below' after the Solicitor General conceded error).
[28] *See, e.g.*, *In re Hamilton Cnty. Bd. Elec.*, No. 16-3350, ECF No. 8 (6th Cir. May 6, 2016) (appointing appellate counsel to defend district court's order).

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

PERSONAL AUDIO, LLC

*Appellant,*

v.

ELECTRONIC FRONTIER
FOUNDATION,

*Appellee.*

Case No. 16-1123

## DECLARATION OF CINDY COHN IN SUPPORT OF APPELLEE'S SUPPLEMENTAL BRIEFING ON STANDING

I, Cindy Cohn, declare as follows:

1.      I am the Executive Director of the Electronic Frontier Foundation (EFF), the Appellee in this appeal. I have personal knowledge of the matters set forth below and, if called to testify to them, could do so competently.

2.      The Electronic Frontier Foundation ("EFF") is a nonprofit legal services organization that advocates for the rights of digital consumers and innovators. EFF is a donor-funded 501(c)(3) nonprofit organization with over 26,000 dues-paying members.

3.      A significant part of EFF's work involves public outreach, including by regularly speaking on industry panels, radio and television programs,

1

and maintaining an active blog and social media accounts where EFF sheds light on issues implicating law and technology, and submitting op-eds to various publications.

4.    As part of EFF's outreach efforts, its attorneys, activists, and technologists appear regularly as guests on podcasts. For instance, EFF staffers have been guests on podcasts including On the Media, produced by WNYC Studios, the Adam Carolla Show, WTF With Marc Maron, the Lawyer 2 Lawyer podcast, and All Things Considered from National Public Radio.

5.    Also as part of EFF's outreach and public education mission, EFF produced and distributed its own podcast series, titled Line Noise, from 2006 to 2009. Previous episodes of EFF's podcast are available on the Internet at https://www.eff.org/linenoise.

6.    Podcasts are an important vehicle for EFF to distribute its message. Although EFF has not produced a podcast episode since 2009, its staff regularly appear as guests on other podcasts, and EFF has, from time to time, considered producing and distributing new podcast episodes.

7.    During 2014, EFF had internal discussions regarding restarting our Line Noise podcast series but chose not to do so at that time because of lack of access to professional-quality production equipment and because of limited staff resources.

8.      On May 17, 2016, I had a conversation with an award-winning freelance television and radio producer to discuss possible ways EFF could raise its profile nationally. The next day, the producer emailed me to say that she had an idea for how we could work together to achieve EFF's goals. We later talked by phone on, May 23, 2016, when the producer suggested that EFF should consider producing its own podcast or partnering on a podcast.

9.      That same day I discussed the possibility of an EFF podcast with Rebecca Jeschke, EFF's Director of Media Relations and we agreed the idea had merit and was worthy of further research and consideration. Ms. Jeschke and I both began researching various podcast formats to help us think about the right approach for EFF.

10.      On June 1, 2016, I had further discussions with the producer where we brainstormed possible partner organizations. On June 4, 2016, the producer emailed me to suggest I meet with a potential partner organization.

11.      On July 8, 2016, Rebecca Jeschke and I met with a potential media partner to discuss collaborating on a new series of podcasts.

12.      As of July 28, 2016, EFF is still considering the proposal and has not made a final decision whether to proceed with the proposed collaboration.

13.      Even if the proposed collaboration does not come to fruition, it is possible that EFF would produce or collaborate on a new podcast series in the

future. This could include further episodes of our Line Noise series or a brand new podcast series. Podcasts remain an important potential tool for EFF in distributing our message.

14.    If EFF does produce or partner on new podcast episodes, it would likely distribute episodes through our own website and other services such as iTunes. These means of distribution would include links to the media files, text describing the content, and would be updated.

I, Cindy Cohn, hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2016

Cindy Cohn
Executive Director
Electronic Frontier Foundation

4